## IN THE UNITED STATES DISTRICT COURT FOR THE
## WESTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| **CORALYNN HERRING,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Case No. CIV-17-332-STE** |
| | ) | |
| **NANCY A. BERRYHILL, Acting** | ) | |
| **Commissioner of the Social Security** | ) | |
| **Administration,** | ) | |
| | ) | |
| **Defendant.** | ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff brings this action pursuant to 42 U.S.C. § 405(g) for judicial review of the final decision of the Commissioner of the Social Security Administration denying Plaintiff's application for supplemental security income under the Social Security Act. The Commissioner has answered and filed a transcript of the administrative record (hereinafter TR. ____). The parties have consented to jurisdiction over this matter by a United States Magistrate Judge pursuant to 28 U.S.C. § 636(c).

The parties have briefed their positions, and the matter is now at issue. Based on the Court's review of the record and the issues presented, the Court **AFFRIMS** the Commissioner's decision.

## I.       PROCEDURAL BACKGROUND

Initially and on reconsideration, the Social Security Administration denied Plaintiff's application for benefits. Following an administrative hearing, an Administrative Law Judge (ALJ) issued an unfavorable decision. (TR. 10-18). The Appeals Council denied Plaintiff's

request for review. (TR. 1-3). Thus, the decision of the ALJ became the final decision of the Commissioner.

## II.   THE ADMINISTRATIVE DECISION

The ALJ followed the five-step sequential evaluation process required by agency regulations. *See Fischer-Ross v. Barnhart*, 431 F.3d 729, 731 (10th Cir. 2005); 20 C.F.R. § 416.920. At step one, the ALJ determined that Plaintiff had not engaged in substantial gainful activity since March 31, 2014, the application date. (TR. 12). At step two, the ALJ determined Ms. Herring had the following severe impairments: affective disorder, anxiety, and posttraumatic stress disorder (PTSD). (TR. 12). At step three, the ALJ found that Plaintiff's impairments did not meet or medically equal any of the presumptively disabling impairments listed at 20 C.F.R. Part 404, Subpart P, Appendix 1 (TR. 14).

At step four, the ALJ concluded that Ms. Herring retained the residual functional capacity (RFC) to:

> [P]erform a full range of work at all exertional levels but with the following nonexertional limitations: Work must be limited to simple, routine, and repetitive tasks. The claimant can occasionally have interaction with coworkers and supervisors and only superficial and no direct contact with the public. The claimant is able to read only simple language and signage.

(TR. 15). At step four, the ALJ found that Plaintiff had no past relevant work. (TR. 17). As a result, the ALJ proceeded to step five. There, the ALJ presented several limitations to a vocational expert (VE) to determine whether there were other jobs in the national economy that Plaintiff could perform with her RFC. (TR. 51). Given the limitations, the VE identified three jobs from the Dictionary of Occupational Titles (DOT). (TR. 51-52).

The ALJ adopted the testimony of the VE and concluded that Ms. Herring was not disabled based on her ability to perform the identified jobs. (TR. 17-18).

## III.   ISSUES PRESENTED

On appeal, Plaintiff alleges the ALJ erred in her consideration of: (1) evidence of Global Assessment of Functioning (GAF) scores from Physician's Assistant Richard Hanes and Drs. Fatema Haque and Rajeswara Bhupathiraju and (2) an opinion from consultative psychologist Dr. Cynthia Repanshek.

## IV.   STANDARD OF REVIEW

This Court reviews the Commissioner's final "decision to determin[e] whether the factual findings are supported by substantial evidence in the record and whether the correct legal standards were applied." *Wilson v. Astrue*, 602 F.3d 1136, 1140 (10th Cir. 2010). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (quotation omitted).

While the court considers whether the ALJ followed the applicable rules of law in weighing particular types of evidence in disability cases, the court will "neither reweigh the evidence nor substitute [its] judgment for that of the agency." *Vigil v. Colvin*, 805 F.3d 1199, 1201 (10th Cir. 2015) (internal quotation marks omitted).

## V.   NO ERROR IN THE ALJ'S DISCUSSION OF PLAINTIFF'S GAF SCORES

"The GAF is a 100–point scale divided into ten numerical ranges, which permits clinicians to assign a single ranged score to a person's psychological, social, and occupational functioning." According to the Diagnostic and Statistical Manual of Mental Disorders, a GAF of 41–50 indicates "serious" symptoms (e.g., suicidal ideation, severe

obsessional rituals, frequent shoplifting), OR any serious impairment in social, occupational, or school functioning" and a GAF of 51-60 indicates "moderate" symptoms (e.g., flat affect and circumstantial speech, occasional panic attacks) or moderate difficulty in social, occupational or school functioning. *Diagnostic and Statistical Manual of Mental Disorders* (DSM–IV–TR) (4th ed., text revision, American Psychiatric Association 2000 at 34).

On September 9, 2014, a therapist at Hope Community Services (HCS) rated Plaintiff's GAF at 52. (TR. 307). During Plaintiff's treatment at North Rock Medication Clinic, ("North Rock") Mr. Hanes and Drs. Bhupathiraju and Haque examined Plaintiff and assigned her a GAF score of either 44 or 45. (TR. 403, 411, 416, 420, 424, 443, 448, 452, 458). According to Ms. Herring, the ALJ erred in relying on the GAF score of 52, while failing to discuss the other, lower scores.[1] The Court rejects this argument.

At step two, the ALJ concluded that Plaintiff suffered from severe mental impairments involving affective disorder, anxiety, and posttraumatic stress disorder. (TR. 12). In doing so, the ALJ discussed the 52 GAF score, noting "[t]he claimant had a diagnosis of bipolar disorder with a global assessment of functioning of 52, indicating moderate limitations in functioning." (TR. 14). Plaintiff apparently believes that the ALJ's reference to the 52 GAF score was "the foundation of her mental health decision-making and that opened the door through which the error occurred." (ECF No. 17:3). But at step

---

[1]    In Plaintiff's Brief, she cites a 51 GAF score which was listed as part of an initial assessment/intake record authored by a social worker from HCS on April 29, 2014. (ECF No. 17:4). But Ms. Herring does not thereafter argue that the ALJ erred in failing to consider this evidence, instead limiting her argument to the scores from P.A. Hanes and Drs. Haque and Bhupathiraju.

two, the ALJ merely referenced the 52 GAF score in her recitation of the evidence. (TR. 13-14). In doing so, the ALJ correctly concluded that the score reflected "moderate" limitations in functioning. *See supra*, DSM–IV–TR at 34, stating that a GAF of 51-60 indicates "moderate" symptoms or "moderate" difficulty in social, occupational or school functioning. *Diagnostic and Statistical Manual of Mental Disorders* (4th ed., text revision, American Psychiatric Association 2000 at 34). But the ALJ also stated "[t]he global assessment of functioning, however, is not intended for forensic purposes, such as an assessment of disability or competency or the individuals' control over the behavior." (TR. 14, n.1 citing the Diagnostic and Statistical Manual of Mental Disorders, Fourth Edition, pages xxiii and xxvii). Based on this statement, and the ALJ's subsequent reliance on additional evidence and testimony from a vocational expert,[2] it is clear that the ALJ did not use the 52 GAF score as a "foundation" for her findings, rather it was one piece of evidence which she considered.

Ms. Herring also argues that subsequent to the 52 score, her mental state worsened, as reflected by nine additional scores which reflected GAF ratings of 44 and 45. (ECF No. 17:4-9). As a result, Ms. Herring argues that the ALJ erred in failing to discuss the remaining scores. (ECF No. 17:4-9). Plaintiff is wrong.

Each of the nine scores was assigned when Plaintiff visited North Rock, and no accompanying explanations were given for the scores. (TR. 403, 411, 416, 420, 424, 443,

---

[2]   At step two, the ALJ summarized additional findings from HCS, a consultative examination from Dr. Repanshek, findings from State Agency physicians and psychologists, and a consultative vision examination from Dr. E.D. Jones. (TR. 12-14). At step four, the ALJ relied on Plaintiff's testimony and a third-party function report. (TR. 15-16). And at step five, the ALJ heard, and ultimately adopted, testimony from a VE regarding the type of work that Plaintiff could perform based on her RFC. (TR. 17-18, 51-52).

448, 452, 458). As part of each visit, the physician or P.A. noted Plaintiff's current symptoms and diagnoses, but did not directly link the GAF scores or the other findings to specific work-related limitations. (TR. 403, 411, 416, 420, 424, 443, 448, 452, 458). Plaintiff alleges error in failing to consider medical evidence which reflected Plaintiff's:

- History of depression and mood swings at ages 8-9,

- Attempted suicide by setting herself on fire at age 18

- Being in a mental hospital after being sexually abused as a child,

- Being the aggressor in her home,

- Being removed from her home due to sexual abuse,

- Being raised in a girl's home all of her life,

- Not having custody of her five children,

- Having five children with five different fathers, and

- Being raped as a child.

(ECF No. 17:5). According to Ms. Herring, "all of these findings are tied to her GAF scores," but the Court disagrees. The statements upon which Plaintiff relies were part of a "Client Assessment Record" completed by Ms. Herring. *See* TR. 428-435. While the information may have been later utilized by Plaintiff's physicians, no medical professional opined that these "findings" served as a basis for Plaintiff's GAF scores. *See* TR. 403, 411, 416, 420, 424, 443, 448, 452, 458.

Plaintiff also states that the lower GAF scores "were in direct conflict with the ALJ's finding of the ability to work." (ECF No. 17:6). But Ms. Herring's theory is not entirely self-evident, considering that the scores were not accompanied by any specific, work-

related limitations. *See Butler v. Astrue,* 412 F. App'x 144, 147 (10th Cir. 2011) (noting that GAF scores that are not linked to any work-related limitations are not particularly helpful and cannot alone determine disability); *Eden v. Barnhart,* 109 F. App'x 311, 314 (10th Cir. 2004) (noting that because a GAF of 50 "may not relate to [Plaintiff's] ability to work, the score, standing alone, without further explanation, does not establish an impairment severely interfering with an ability to perform basic work activities."); *Lee v. Barnhart,* 117 F. App'x 674, 678 (10th Cir. 2004) (noting that an unexplained GAF score might indicate an impairment "solely within the social, rather than the occupational, sphere"); *Cainglit v. Barnhart*, 85 F. App'x 71, 75 (10th Cir. 2003) ("In the absence of any evidence indicating that [the physicians] assigned these GAF scores [ranging from 39-45] because they perceived an impairment in [the plaintiff's] ability to work, the scores, standing alone, do not establish an impairment seriously interfering with [the plaintiff's] ability to perform basic work activities.").

Ms. Herring also states that her paranoia, getting into fights, and having been arrested, "will not work very effectively in a work environment." (ECF No. 17:7). But this conclusion appears to be Ms. Herring's personal opinion, as no medical professional has drawn this conclusion. Plaintiff also contends that:

- symptoms involving hearing voices and thinking that people are out to get her "are directly relatable to work with regard to the ability to take instructions form supervisors without lashing out at them, or maintain concentration, persistence and pace without being distracted or distracting others[.]" and

- "her main problem preventing work" is that "she has a problem being around people."

(ECF No. 17:7). With respect to these symptoms, the ALJ noted Plaintiff's report to Dr. Repanshek regarding a belief that "people were out to get her" and Ms. Herring's "past history" of "auditory/delusions/paranoia" but also found that Plaintiff had not had those thoughts in over a year based on her current medication regime. (TR 12, 13). Even so, the RFC accommodated these limitations by limiting Plaintiff to only "occasional" interaction with co-workers and supervisors and no direct contact with the public. (TR. 15).

Finally, and as noted by Ms. Herring herself, the GAF scores, standing alone, are not significantly probative. As noted by the Tenth Circuit Court of Appeals, the Commissioner has found GAF scores do not "have a direct correlation to the severity requirements in [the] mental disorders listings," and "the [ ] *Diagnostic and Statistical Manual of Mental Disorders* has discontinued its use because of "its conceptual lack of clarity . . . and questionable psychometrics in routine practice." *Rose v. Colvin*, 634 F. App'x. 632, 636 (10th Cir. 2015) (internal quotation marks and citations omitted); *see* ECF No. 17:3-4. The ALJ made a similar finding in the decision,[3] and her reliance on the current state of the law concerning the use of GAF scores provides further support for the Court's conclusion that the ALJ did not err in failing to discuss the lower scores.

## II.    NO VIOLATION OF THE TREATING PHSYICIAN RULE

Ms. Herring alleges that "in violation of the long-held Treating Physician Rule, the ALJ ignored or rejected the opinions of Ms. Herring's treating physicians and consultative

---

[3]    TR. 14, n. 1.

examiner, Dr. Cynthia Repanshek, regarding the severity of [Plaintiff's] mental impairments." (ECF No. 17:9). According to Plaintiff, the ALJ violated the "treating physician rule" because she "never determined the weight to be granted to the treating physician or the CE, all of which opinions conflict with the ALJ's finding." (ECF No. 17:11).

Outside of the specific GAF scores, which the Court has already addressed, Plaintiff cites no opinions from any of Plaintiff's treating physicians which the ALJ allegedly ignored and the Court will not comb the record to find support for this argument. *See Keyes–Zachary v. Astrue,* 695 F.3d 1156, 1161 (10th Cir. 2012) ("We will consider and discuss only those contentions that have been adequately briefed for review."); *Effinger v. Callahan,* 1997 WL 446724, at *2 (10th Cir. 1997) (holding that the Court "will not comb through the record where counsel has not provided specific references tied to an argument"); *Mueller v. Colvin*, No. CIV-13-805-M, 2014 WL 3419313, at *3 (W.D. Okla. July 11, 2014) ("Plaintiff does not cite to a single treating physician *opinion* in the record—much less to one that the ALJ ignored—and the undersigned will not comb the medical record looking for such an opinion.").

And with respect to Dr. Repanshek's "opinion", Plaintiff references only the psychologist's diagnoses of moderate to severe bipolar II disorder and PTSD. (ECF No. 17:10). But the ALJ acknowledged those diagnoses and as the Tenth Circuit Court of Appeals has stated, "[t]he mere diagnosis of a condition does not establish its severity or any resulting work limitations." *Paulsen v. Colvin*, 665 F. App'x 660, 666 (10th Cir. 2016). Accordingly, the Court finds no merit to Plaintiff's allegation that the ALJ violated the

"treating physician rule"—either with respect to any of Plaintiff's treating physicians or Dr. Repanshek.

**ORDER**

The Court has reviewed the medical evidence of record, the transcript of the administrative hearing, the decision of the ALJ, and the pleadings and briefs of the parties. The ALJ did not err in failing to discuss the GAF scores, as they were not linked to any specific work-related limitations and standing alone, they were not significantly probative on the issue of disability. Likewise, the Court rejects Plaintiff's allegation of error regarding the ALJ's treatment of evidence from Plaintiff's treating physicians and consultative examiner, as Plaintiff has only referenced the treating physician's GAF scores and Dr. Repanshek's diagnoses. Accordingly, the Court **AFFIRMS** the Commissioner's decision.

ENTERED on January 26, 2018.

_____

SHON T. ERWIN
UNITED STATES MAGISTRATE JUDGE